Case 4:21-cv-02924   Document 15   Filed on 07/27/22 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
July 27, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREEM LUKE PENN, | § | |
| TDCJ # 02342133, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-2924 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Kareem Luke Penn, an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a disciplinary proceeding. Penn proceeds *pro se*. The respondent filed a motion for summary judgment (Dkt. 9), along with relevant documents and audio recordings (Dkt. 10, Dkt. 12). Penn filed a response (Dkt. 13). After reviewing the petition, the motion and briefing, the applicable law, and all matters of record, the Court concludes that summary judgment should be **GRANTED** for the respondent and that the habeas petition should be dismissed. The Court's reasons are explained below.

### I.   BACKGROUND

In 2021, Penn was convicted of evading arrest or detention with a vehicle in the 221st Judicial District Court for Montgomery County and was sentenced to 2 years in TDCJ (Dkt. 1, at 2; Dkt. 9-2). The parties agree that Penn is eligible for release on

mandatory supervision. In his pending federal habeas petition, Penn does not challenge his conviction or sentence. Rather, he seeks relief from a disciplinary conviction on August 24, 2021, in Case No. 20210245599 (Dkt. 1, at 5).

Penn states that TDCJ officials charged him in Case No. 20210245599 with possession of contraband (*id.*). However, disciplinary records supplied by the respondent reflect that Penn was not charged with possession of contraband (Offense 16.0), but rather with soliciting assistance to violate a TDCJ rule (Offense 30.0).[1] In particular, officials alleged that Penn used the Offender Telephone System to request that two persons outside TDCJ put $400 on a Cash App account and that the funds were then sent to an inmate's family "with the intention for contraband" (Dkt. 10-2, at 5-6).[2]

On August 16, 2021, officials notified Penn that he had been charged with soliciting assistance to violate a TDCJ rule. The hearing on the charge was convened on August 20, 2021, but then continued until August 24, 2021 to allow further investigation (id. at 3). Penn, who was represented at the hearing by counsel substitute, pleaded not guilty. He stated at the hearing that he had never possessed or been caught with contraband, but rather officials had assumed incorrectly that contraband was involved (id.). The charging officer testified that officials had found a cell phone in Penn's cell and, during a subsequent

---

[1] *See* Dkt. 10-1 (disciplinary grievance record); Dkt. 10-2 (disciplinary hearing record); Dkt. 12 (audio recording of disciplinary hearing); *see also* TDCJ Disciplinary Rules and Procedures for Offenders (Aug. 2019), at 37-38, 40, available at https://www.tdcj.texas.gov/documents/cid/ Disciplinary_Rules_and_Procedures_for_Offenders_English.pdf (last visited July 26, 2022).

[2] Cash App is an application for smart phones that facilitates wireless money transfers, among other transactions. *See* Cash App, available at https://cash.app/ (last visited July 26, 2022).

investigation, listened to inmate phone calls and discovered Penn's call authorizing a total of $400 on a Cash App account, listing and spelling the name(s) at issue. On cross-examination, when Penn asked the officer how he concluded that the money in question was for a cell phone, the officer stated that he had not reached that conclusion and therefore had not charged Penn with possession of contraband. Penn also asked whether another inmate had admitted ownership of the cell phone, but the hearing officer denied the question as irrelevant to the question of solicitation (*id*. at 4-5; Dkt. 12). Penn then made a statement for the record, claiming that he made the call because he had been extorted and physically threatened by another inmate (Dkt. 10-2, at 10-11; Dkt. 12). After receiving Penn's statement, the officer's testimony, and the officer's report, the hearing officer found Penn guilty based on the officer's testimony and report. He imposed punishment as the loss of 45 days of commissary privileges; reduction of line class status from L1 to L2; and the loss of 30 days of previously earned good-time credits (Dkt. 10-2, at 3).

Penn filed an administrative grievance, Grievance No. 2021154911, to appeal the disciplinary conviction. He executed the Step 1 grievance on August 25, 2021. On August 28, 2021, officials denied his grievance because sufficient evidence supported the conviction and due process requirements had been satisfied:

> Major disciplinary case # 20210245599 was reviewed and no procedural errors were identified. All due process requirements were satisfied, and the. punishment imposed was within the recommended guidelines. Sufficient evidence was provided to support a finding of guilty; therefore, the charge and punishment will stand as rendered.

(Dkt. 10-1, at 4). Officials returned the grievance to Penn on August 30, 2021 (*id*. at 3). Penn has submitted, along with his federal petition, the first page of a Step 2 grievance regarding the disciplinary case (Dkt. 1, at 14). However, the second page is missing and the grievance lacks a grievance number or other indication that it was processed by TDCJ officials. The respondent presents an affidavit from the custodian of records for the inmate grievance department stating that Penn did not file a Step 2 grievance. *See* Dkt. 9-3, at 2 ("Our records indicate that inmate Kareem Luke Penn did not file a Step 2 grievance # 202115911, relating to this disciplinary case #20210245599, as reflected by our grievance records screen 18") (emphasis deleted).

On September 1, 2021, two days after officials returned his Step 1 grievance, Penn executed his federal petition and placed it in the prison mail system (Dkt. 1, at 11). Penn brings six claims for relief: (1) that officials charged him with possession of contraband but had no evidence of contraband; (2) that another inmate acknowledged ownership of the cell phone that was the contraband in question; (3) that he had presented officials with evidence that he was extorted; (4) that he had never possessed or intended to possess contraband with the money sent by Cash App; (5) that he had provided officials with information about Cash App, permitting him to charge another inmate with use of a cellphone, but officials failed to charge the inmate with extortion and instead charged Penn for soliciting money; and (6) that another inmate was charged with use of a cell phone based on the information Penn provided. As relief for his claims, he seeks dismissal of the charges against him, among other relief (Dkt. 1, at 6-8). The respondent argues that Penn's

claims are not fully exhausted, that some punishments imposed against him do not implicate the Due Process Clause, and that the loss of previously earned good-time credit did not violate his due process rights.

## II. LEGAL STANDARDS

### A. *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (cleaned up). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. In deciding a summary judgment motion, the reviewing court must "construe all facts

and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up).

### III. ANALYSIS

#### A. Prison Disciplinary Proceedings

The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a); *Brecht v. Abrahamson,* 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness") (cleaned up). To prevail, a habeas corpus petitioner must establish a constitutional violation.

An inmate's rights in the prison disciplinary setting are governed by the Due Process Clause of the Fourteenth Amendment. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015). The Supreme Court has decided that only those state-created substantive interests which "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin,* 515 U.S. at 487. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir. 1995). A Texas prisoner cannot demonstrate a due process violation in the prison

disciplinary context without first satisfying the following criteria: (1) he must be eligible for early release on the form of parole known as mandatory supervision; and (2) the disciplinary conviction at issue must have resulted in a loss of previously earned good time credit. *See Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000).

**B.    Exhaustion**

The respondent argues that summary judgment is warranted on all of Penn's habeas claims because, although he filed a Step 1 grievance, he failed to present any of his claims in a Step 2 grievance and thus failed to exhaust his available remedies as required by 28 U.S.C. § 2254(b). *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (discussing TDCJ's two-step administrative grievance process); *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995) (under 28 U.S.C. § 2254(b), a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief"). The respondent urges dismissal of all claims as unexhausted and procedurally defaulted. Penn has not addressed the exhaustion issue.[3]

Penn's petition is subject to dismissal for failure to exhaust administrative remedies. However, the Court may deny a habeas application on the merits, even if the petitioner has not exhausted all available remedies. 28 U.S.C. § 2254(b)(2). The Court therefore proceeds to the merits of Penn's claims.

---

[3]    Although Penn submitted a page from a Step 2 grievance with his petition (Dkt. 1, at 14), the Step 2 grievance is incomplete and appears unprocessed, as stated above. In any event, because Penn signed his federal habeas petition on September 1, 2021, only two days after his Step 1 grievance was returned to him, it appears that a Step 2 grievance could not have been processed before Penn filed this suit.

### C.     Line-Class Status and Loss of Privileges

Penn's punishment in Case No. 20210245599 included the loss of commissary privileges and reduced line-class status. The Fifth Circuit has recognized that sanctions such as these, which are "merely changes in the conditions of [an inmate's] confinement," do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  Reductions in a prisoner's classification, which can have a potential impact on the prisoner's ability to earn good-time credit, also are too attenuated to be protected by the Due Process Clause. *See Malchi*, 211 F.3d at 958; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Because these sanctions do not implicate a protected liberty interest, Penn is not entitled to habeas corpus relief from them.

### D.     Good-Time Credits

Because Penn is eligible for mandatory supervision, he is entitled to procedural protections to ensure that the "state-created right [to good time-credits] is not arbitrarily abrogated." *Madison,* 104 F.3d at 768; *see Teague v. Quarterman,* 482 F.3d 769, 775-76 (5th Cir. 2007); *Malchi,* 211 F.3d at 957-58.  The Supreme Court has recognized that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so."  *Wolff*, 418 U.S. at 561. Because prison disciplinary hearings are "not part of a criminal prosecution," "the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer,* 408 U.S. 471, 488 (1972)). The minimum amount of procedural due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an

opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *See id.* at 563-67. To merit habeas relief, a prisoner must show not only that he was denied these procedural protections, but also that he was prejudiced by the constitutional violation. *Banuelos v. McFarland*, 41 F.3d 232, 234–35 (5th Cir. 1995); *Smith v. Johnson*, 774 F. App'x 256 (5th Cir. 2019).

In this case, the disciplinary hearing records reflect that Penn was provided with sufficient notice of the hearing, the opportunity to call witnesses or present evidence, and a written statement supporting the conviction. *See* Dkt. 10-2. Penn does not claim that he was deprived of these protections.

Penn's petition claims that officials lacked evidence that he possessed contraband, or intended to possess contraband, and that officials ignored his evidence that another inmate had extorted him in connection with the incident for which he was charged (Dkt. 1, at 6-8). The Court construes these arguments as a claim that the evidence against him was insufficient to support his disciplinary conviction.[4] Disciplinary sanctions imposed by prison officials must be supported by "some evidence" to be consistent with due process. *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009); *Broussard v. Johnson,* 253 F.3d

---

[4] Although Penn refers to the disciplinary charge as possession of contraband (Dkt. 1, at 5), all evidence of record supports the respondent's position that the charge against him was soliciting assistance to violate a TDCJ rule (Dkt. 10-1; Dkt. 10-2; Dkt. 12). To the extent Penn argues otherwise, he fails to demonstrate a genuine issue of material fact in support of his position. *See Hamilton*, 232 F.3d at 477.

874, 876-77 (5th Cir. 2001). "The goal of this standard—variously a 'modicum of evidence,' 'any evidence,' or 'some evidence'—is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson,* 242 F.3d 534, 536 (5th Cir. 2001). Therefore, a habeas court will not disturb the findings of a prison disciplinary hearing "unless they are arbitrary and capricious." *Banuelos,* 41 F.3d at 234. Additionally, habeas courts "do not assess the weight of the evidence" when reviewing prison disciplinary proceedings. *Hudson,* 242 F.3d at 537.

Here, the charging officer's offense report and testimony are sufficient to supply a "modicum of evidence" supporting Penn's disciplinary conviction for soliciting assistance to violate a TDCJ rule. *See Hudson*, 242 F.3d at 536-37. In particular, the record contained evidence that Penn used the Offender Telephone System to authorize two people outside TDCJ to put $400 on a Cash App account and that the funds in question were delivered to an inmate's family (Dkt. 10-2, at 4-6; Dkt. 12). Although Penn argues that his actions could be explained by extortion and threats from another inmate, the hearing officer heard this evidence before finding him guilty, and this Court may not weigh the evidence. *See Hudson*, 242 F.3d at 537.

Penn has not demonstrated that he was denied due process or that the challenged disciplinary conviction fails for lack of sufficient evidence. Therefore, the respondent is entitled to summary judgment and the petition must be dismissed.

IV.     **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

11 / 12

After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.     CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Respondent's motion for summary judgment (Dkt. 9) is **GRANTED**.

2. The petition for a writ of habeas corpus is **DENIED** and this case is **DISMISSED with prejudice**.

3. A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on _____July 27_____, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE